UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IRIS CALOGERO,** | **CIVIL ACTION NO.** |
| **Plaintiff** | **SECTION:** |
| vs | **JUDGE** |
| **SHOWS, CALI & WALSH, LLP** a Louisiana limited liability partnership; **MARY CATHERINE CALI,** an individual; and **JOHN C WALSH,** an individual. | **MAGISTRATE JUDGE** |
| | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

_____

## COMPLAINT -- CLASS ACTION

NOW INTO COURT, Plaintiff, IRIS CALOGERO (hereinafter referred to as "PLAINTIFF") by and through undersigned counsel, alleges upon knowledge as to herself and her own acts, and upon information and belief as to all other matters, and brings this complaint against the above-named DEFENDANTS and in support thereof alleges the following:

### PRELIMINARY STATEMENT

1.      PLAINTIFF brings this action on her own behalf and on the behalf of all others similarly situated for statutory damages arising from SHOWS, CALI & WALSH, LLP; MARY CATHERINE CALI, and JOHN C WALSH's (collectively hereinafter referred to as "DEFENDANTS") violations of the Fair Debt Collection Practices Act (hereinafter referred to as the "FDCPA"), 15 U.S.C. § 1692, *et seq*.

## JURISDICTION AND VENUE

2. The Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b) because PLAINTIFF and DEFENDANTS reside and/or do business in the Eastern District of Louisiana. Venue is also proper in this District because the acts and transactions that give rise to this action occurred, in substantial part, in the Eastern District of Louisiana.

## PARTIES

4. PLAINTIFF is a natural person residing in Slidell, Louisiana.

5. PLAINTIFF is a "consumer" as defined in the FDCPA at 15 U.S.C. § 1692a(3).

6. PLAINTIFF allegedly owes a (past due) consumer debt as defined by 15 U.S.C. § 1692a(5).

7. SHOWS, CALI & WALSH, LLP (hereinafter referred to as "SCW") is a Louisiana limited liability partnership which regularly collects or attempts to collect debts owed or due or asserted to be owed or due another.

8. MARY CATHERINE CALI (hereinafter referred to as "MCC") is a Partner with SCW who regularly collects or attempts to collect debts owed or due or asserted to be owed or due another.

9. JOHN C. WALSH (hereinafter referred to as "JCW") is a Partner with SCW who regularly collects or attempts to collect debts owed or due or asserted to be owed or due another.

10. PLAINTIFF is informed and believes, and thereon alleges, that DEFENDANTS regularly collect or attempt to collect consumer debts owed or due or asserted to be owed or due another and that each DEFENDANT is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

## STATEMENT OF FACTS

11. PLAINTIFF repeats, re-alleges, and incorporates by reference, paragraphs 1 through 10 inclusive, above.

12. In 2005, the State of Louisiana was slammed by two major hurricanes that devastated the Gulf Coast. Hurricane Katrina made landfall on August 29, 2005; Hurricane Rita made landfall on September 24, 2005 (collectively "the 2005 Hurricanes").

13. The devastation created an unprecedented housing crisis.

14. In response, Congress appropriated billions of dollars in disaster relief through the U.S. Department of Housing and Urban Development's (HUD) Community Development Block Grant (CDBG) program to affected areas in five states, including Louisiana.

15. HUD's authority to make CDBG funds available to states, tribes and local governments arises from the Housing and Community Development Act of 1974 (HCDA), 42 U.S.C. §5301 *et seq*.

16. The "HCDA vests in local administrators…the power to allocate federal fiscal resources for the purpose of achieving congressionally established goals." *Dixson v. U.S.,* 465 U.S. 482, 500 (1984).

17. "By accepting the responsibility for distributing these federal fiscal resources, [local administrators] assume[] the quintessentially official role of administering a social service program established by the United States Congress." *Dixson v. U.S.* at 497

18. The day-to-day administration of the federal program, including the actual expenditure of federal funds, is delegated to state and local authorities. *Dixson v. U.S.* at 486.

19. To receive HCDA funds, recipient state and local authorities must go through an application and approval process.

20. HUD audits administration of the federal funds and may take corrective actions ranging from issuing a warning letter to instituting collections procedures to recover improperly expended funds. 42 U.S.C. §5311(a); 24 C.F.R. §570.496(b), (d).

21. In early 2006, Louisiana submitted its application for CDBG funds. On or about May 12, 2006, Louisiana submitted Amendment 1 to its original action plan, known as the Road Home Program.

22. The Road Home Program was administered by the Louisiana Office of Community Development (OCD) and the Louisiana Recovery Authority.

23. PLAINTIFF's home, like many others, suffered significant damage caused by the 2005 Hurricanes.

24. On May 11, 2007, PLAINTIFF entered into a contract with the OCD to obtain a HUD Road Home grant. A copy of the Agreement is attached hereto as **Exhibit 1**.

25. The agreement provides that its purpose is

> to provide compensation for damages incurred by the Homeowner(s) due to Hurricane Katrina in August 2005 and/or Rita in September 2005. Funding for this grant comes from the Community Development Block Grant (CDBG) program administered through the U.S. Department of Housing and Urban Development. CDBG funds have been allocated to the State of Louisiana's Office of Community Development and are being provided to eligible residents of the State through *The Road Home* program.

*Id*.

26. Exhibit 1 contains an enforcement provision notifying PLAINTIFF that she "may be prosecuted by Federal, State and/or local authorities in the event that Homeowner(s) make or file false, misleading and/or incomplete statements and/or documents."

27. On February 9, 2018, DEFENDANTS sent, or caused to be sent, the collection letter, attached hereto as **Exhibit 2**, to collect $4,598.89 in an alleged grant overpayment.

28. DEFENDANTS write in pertinent part:

Our office represents the State of Louisiana, Division of Administration, Office of Community Development-Disaster Recovery Unit ("Road Home"), in connection with certain Road Home Grant Funds ("Grant funds") which you received. The amount due to Road Home for repayment is described above. Our client's records indicate that you received more in total insurance proceeds than the amount used to calculate your Grant award. Since you have not repaid those additional insurance funds to Road Home in accordance with your Road Home Grant Agreement, you have breached your Grant obligations. Those obligations are clearly outlined in your Road Home Grant Agreement.

*****

Please be advised that if you do not take any action to resolve this matter within ninety days after your receipt of this letter, Road Home may proceed with further action against you, including legal action, in connection with the full Grant repayment balance owed as outlined above. You may also be responsible for legal interest from judicial demand, court costs, and attorney fees if it is necessary to bring legal action against you.

*****

This office is a debt collector. The purpose of this letter is to recover the Road Home Grant Funds repayment set forth above. Any information obtained as a result of this correspondent will be used for the purpose of recovering the Road Home Grant Funds repayment.

29. On March 5, 2018, PLAINTIFF disputed receiving $4,598.89 in insurance proceed overages.

30. On April 10, 2018, DEFENDANTS sent correspondence which included the following breakdown of the alleged debt: $5,300 due to duplicated FEMA benefits, $1,269.85 in overpaid homeowner insurance proceeds, plus a $1,970.96 credit due to a decrease in an insurance penalty. **Exhibit 3**.

31. As purported proof of the duplicated FEMA benefits, DEFENDANTS provided a document (with a print date of October 27, 2008) detailing the FEMA benefits paid to PLAINTIFF. *See* Exhibit 3.

32. As for the alleged overpayment of homeowner's insurance benefits, DEFENDANTS claim PLAINTIFF's "homeowner's insurance carrier electronically provided confirmation" of the amount paid. *See* Exhibit 3.

33. A copy of the electronic confirmation was not provided to PLAINTIFF.

34. PLAINTIFF is informed and believes and therefore alleges that PLAINTIFF and the class members are entitled to statutory damages and may have also suffered damages in other ways and to other extents not presently known to PLAINTIFF, and not specified herein. PLAINTIFF reserves the right to assert additional facts and damages not referenced herein, and/or to present evidence of the same at the time of trial.

## **CLASS ALLEGATIONS**

35. PLAINTIFF repeats, re-alleges, and incorporates by reference, paragraphs 1 through 34 inclusive, above.

36. These claims for relief are brought by PLAINTIFF individually and on behalf of the following class:

    a. A class of consumers, who:

        i. Had executed an agreement with the OCD to receive the Road Home grant; and

        ii. Within one year prior to the filing of this action were sent an initial collection letter from DEFENDANTS in substantially the same form as Exhibit 1 which stated that "Road Home may proceed with further

action against you, including legal action, in connection with the full Grant repayment balance owed as outlined above. You may also be responsible for legal interest from judicial demand, court costs, and attorney fees if it is necessary to bring legal action against you."; and/or

iii. Which failed to notify consumers that the debt is legally unenforceable; and/or

iv. Which failed to notify consumers that repayment of the alleged debt would restart the statute of limitations.

37. PLAINTIFF does not know the exact size or identities of the class as DEFENDANTS maintain exclusive control of such information. Because of the widespread use and reliance on Road Home grants following the 2005 Hurricanes, PLAINTIFF believes the class includes more than 100 individuals. The identities of these individuals can be readily determined from DEFENDANTS' business records. Therefore, the proposed class is so numerous that joinder of all members is impracticable.

38. All class members have been affected by the same conduct. The common questions of law and fact predominate over any questions affecting only individual members of the class. These questions include, but are not limited to:

a. Whether DEFENDANTS' actions violate 15 U.S.C. §§ 1692e2(a), (5), (10), and f;

b. The identities of individuals who were sent a collection letter from DEFENDANTS which violated the above subsections; and

c. The total number of consumers to whom DEFENDANTS sent a collection letter

which violated the above subsections.

39. PLAINTIFF's claims are typical of the claims of the classes and do not conflict with the interests of any other class members. PLAINTIFF and the members of the classes were uniformly subjected to the same conduct.

40. PLAINTIFF will fairly and adequately represent the class members' interests and has retained counsel who are qualified to pursue this litigation. PLAINTIFF's counsel's firm, GESUND & PAILET, LLC, focuses on prosecuting FDCPA lawsuits. PLAINTIFF's counsel, Keren E. Gesund, also has extensive experience in prosecuting FDCPA class actions.

41. PLAINTIFF is committed to vigorously pursuing the claims herein.

42. A class action regarding the issues in this case does not create any problems of manageability.

43. A class action is superior for the fair and efficient adjudication of the class members' claims as Congress specifically envisioned class actions as a principal means of enforcing the FDCPA. *See* 15 U.S.C.§ 1692k. The members of the class are generally unsophisticated consumers, whose rights will not be vindicated in the absence of a class action. Prosecution of separate actions by individual members of the classes would also create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards and would not be in the best interest of judicial economy.

44. If facts are discovered to be appropriate, PLAINTIFF will seek to certify the class under Rule 23(b) of the Federal Rules of Civil Procedure.

## FIRST CLAIM FOR RELIEF

### VIOLATIONS OF THE FDCPA 15 U.S.C. §§ 1692e(2)(A), (5), (10) and §1692f AGAINST DEFENDANTS BROUGHT BY PLAINTIFF INDIVIDUALLY AND ON BEHALF OF THE CLASS

45. PLAINTIFF repeats, re-alleges and incorporates by reference, paragraphs 1 through 44 inclusive, above.

46. A debt collector is prohibited from misrepresenting the "character, amount, or legal status of any debt." 15 U.S.C. §1692e(2)(A).

47. A debt collector is also prohibited from threatening "to take any action that cannot legally be taken" or using any false or "deceptive means to collect or attempt to collect" a debt. 15 U.S.C. §§ 1692e(5) and (10).

48. Finally, a debt collector is prohibited from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f(1).

49. The Road Home program is a federally sponsored program.

50. The OCD was delegated the day-to-day administration of the program to assist Louisiana homeowner's damaged by Hurricanes Katrina and Rita.

51. By accepting responsibility for distributing these federal fiscal resources, the OCD assumed "the quintessentially official role of administering a social service program established by the United States Congress." *Dixson v. U.S.* at 497.

52. An action for money damages for breach of a government contract is subject to a six-year statute of limitation. *See* 28 USC §2415(a); *see also FDIC v. Bledsoe,* 989 F. 2d 805 (5th Cir. 1993) (holding that a private third party, collecting on a defaulted federal debt, was still subject to §2415).

53. Similarly, "an action to recover for diversion of money paid under a grant program…may be brought within six years after the right of action accrues." *See* 28 USCS §2415(b).

54. Nevertheless, on February 9, 2018, over 10 years after PLAINTIFF executed the May 11, 2007 grant agreement, DEFENDANTS sent to PLAINTIFF a collection letter threatening legal action for breach of contract. *See* Exhibit 2.

55. Specifically, DEFENDANTS wrote that PLAINTIFF has "breached [her] Grant obligations," and misrepresents that if she does "not take any action to resolve this matter within ninety days after [] receipt of this letter, Road Home may proceed with further action against you, *including legal action*, in connection with the full Grant repayment balance owed as outlined above." (emphasis added).

56. DEFENDANTS further provide that PLAINTIFF "may also be responsible for legal interest from judicial demand, court costs, and attorney fees."

57. DEFENDANTS misrepresent the status of the alleged debt, by implying that they could still pursue a claim for breach of contract.

58. Further, DEFENDANTS fail to notify PLAINTIFF that the alleged debt is judicially unenforceable and that any repayment of the alleged debt could restart the statute of limitations. *See e.g. Daugherty v. Convergent Outsourcing Inc.*, 836 F.3d 507 (5th Cir. 2016).

59. As a result of DEFENDANTS' FDCPA violations, Plaintiff is entitled to an award of statutory damages.

60. It has been necessary for PLAINTIFF to obtain the services of an attorney to pursue this claim and PLAINTIFF is entitled to recover reasonable attorneys' fees therefor.

61.     It has been necessary for PLAINTIFF, on behalf of herself and those similarly situated to obtain the services of an attorney to pursue this claim and are entitled to recovery reasonable attorneys' fees therefor.

## SECOND CLAIM FOR RELIEF

### VIOLATIONS OF THE FDCPA 15 U.S.C. §§ 1692e(10) and §1692f, BROUGHT BY PLAINTIFF INDIVIDUALLY

62.     PLAINTIFF repeats, re-alleges and incorporates by reference, paragraphs 1 through 61 above.

63.     A debt collector is prohibited from using any false or "deceptive means to collect or attempt to collect" a debt. 15 U.S.C. §§ 1692e(10).

64.     Further, a debt collector is prohibited from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

65.     On February 9, 2018, DEFENDANTS sent, or caused to be sent, the collection letter, attached hereto as Exhibit 2, to collect $4,598.89 in an alleged grant overpayment.

66.     DEFENDANTS misrepresented that PLAINTIFF had received an unreported $4,598.89 in insurance proceeds. *See* Exhibit 2 (stating "Our client's records indicate that you received more in total insurance proceeds than the amount used to calculate your Grant award.").

67.     After PLAINTIFF disputed receiving $4,598.89 in insurance proceed overages, DEFENDANTS sent correspondence revealing that there was only $1,269.85 in unreported insurance proceeds.

68.     It has been necessary for PLAINTIFF to obtain the services of an attorney to pursue this claim and is entitled to recovery reasonable attorneys' fees therefor.

## DEMAND FOR JURY TRIAL

69. Please take notice that PLAINTIFF demands trial by jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF respectfully prays that this Court grant the following relief in PLAINTIFF'S favor, and on behalf of the class, and that judgment be entered against DEFENDANTS for the following:

(1) To certify PLAINTIFF'S claims as a class action pursuant FRCP 23(b);

(2) To Designate PLAINTIFF as the class representative and designate undersigned counsel as class counsel;

(3) To issue notice to the prosed class at DEFENDANTS' expense;

(4) To enter judgment that the practices complained of herein are unlawful under the FDCPA and that DEFENDANTS violated the rights of PLAINTIFF and the class under the FDCPA;

(5) For actual damages incurred by PLAINTIFF pursuant to 15 U.S.C. § 1692k(a)(1);

(6) For statutory damages awarded to PLAINTIFF, not to exceed $1000, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

(7) For statutory damages awarded to the Class Members, pursuant to 15 U.S.C. § 1692k(a)(2)(B), of the amount not to exceed the lesser of $500,000 or 1 per centum (1%) of the net worth of the DEFENDANTS;

(8) For reasonable attorneys' fees for all services performed by counsel in connection with the prosecution of these claims;

(9) For reimbursement for all costs and expenses incurred in connection with the prosecution of these claims; and

(10)   For any and all other relief this Court may deem appropriate.

DATED this 16th day of July 2018.

**GESUND AND PAILET, LLC**

*/s/ Keren E. Gesund, Esq.*
Keren E. Gesund, Esq.
Louisiana Bar No. 34397
3421 N. Causeway Blvd., Suite 805
Metairie, LA  70002
Tel: (504) 836-2888
Fax: (504) 265-9492
keren@gp-nola.com
Attorney for Plaintiff