UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IRIS CALOGERO | * | CIVIL ACTION |
| PLAINTIFF | * | |
| | * | NO. 2:18-cv-06709 |
| | * | |
| V. | * | JUDGE: LANCE M. AFRICK |
| | * | |
| SHOWS, CALI & WALSH, LLP a | * | MAGISTRATE JUDGE: |
| Louisiana Limited Liability Partnership; | * | DANIEL E. KNOWLES, III |
| MARY CATHERINE CALI, an individual; and | * | |
| JOHN C. WALSH, an individual | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS<br>FOR FAILURE TO STATE A CLAIM</u>

Defendants, SHOWS, CALI & WALSH, LLP, MARY CATHERINE CALI, AND JOHN

C. WALSH, submit this Memorandum in Support of its Motion to Dismiss Plaintiff's Complaint

under Fed. R. Civ. P. 12(b)(6) for Failure to State a Claim.

Plaintiff has sued Defendants for violations of the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. 1692, *et. seq.* in connection with Defendants' efforts to collect an

overpayment of a grant Plaintiff received from the Louisiana Road Home program following

Hurricanes Katrina and Rita. Plaintiff claims her obligation to repay the grant overpayment is

an action for breach of a federal contract and is subject to a six (6) year statute of limitations

period. Accordingly, Plaintiff claims her obligation to repay the excess Road Home grant funds

she received is time-barred and Defendants' efforts to collect the grant overpayment almost ten

years after she executed a Grant Agreement violate the FDCPA. Plaintiff further claims

Defendants' actions were deceptive, unfair or unconscionable in violation of the FDCPA. As

more fully shown herein, Plaintiff is incorrect on <u>all</u> counts and each of her claims fail as a matter of law.

Even if the FDCPA applies to the Road Home Grant awarded to Plaintiff at issue in this case, which Defendants dispute, the grant Plaintiff received was through Louisiana's Road Home Program, which was administered by the State of Louisiana through the Louisiana Office of Community Development and the Louisiana Recovery Authority. Although the grant program was funded by HUD through its Community Development Block Grant program, Louisiana – not the federal government – was solely responsible for implementing, designing, and administrating the program. Louisiana – not the federal government - dispersed the grant funds to Plaintiff. And, Plaintiff entered into a Grant Agreement with Louisiana – not the federal government - to repay any excess payments. Thus, Plaintiff's breach of the Grant Agreement is controlled by Louisiana's ten (10) year liberative prescriptive period for breach of contract claims and her obligation to repay her grant overpayment is <u>not</u> time-barred. And, because Plaintiff's repayment obligation is <u>not</u> time-barred under Louisiana law, Defendants did not violate the FDCPA in seeking repayment of the excess grant funds dispersed to Plaintiff, and certainly, they did not engage in deceptive, unfair or unconscionable collection efforts. Moreover, the FDCPA should not even apply in this case as the Road Home Grant and Plaintiff's obligation to repay the excess grant funds is not a consumer debt as defined under the FDCPA.

As more fully set forth below, Plaintiff cannot maintain her claims against Defendants under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. 1692, *et. seq*. Her claims must be dismissed with prejudice in their entirety.

# I.    <u>BACKGROUND</u>

On July 16, 2018, Plaintiff, Iris Calogero, (hereinafter, "Plaintiff" or "Calogero") filed the instant lawsuit against Defendants, Shows, Cali & Walsh, LLC, Mary Catherine Cali and John Walsh setting forth claims for violations of the Fair Debt Collections Practices Act, 15 U.S.C. 1692, et seq. ("FDCPA").[1]  (Rec. Doc. 1.)  In her Complaint, Plaintiff sets forth the following allegations against Defendants:

After Hurricanes Katrina and Rita during 2005, Congress appropriated billions of dollars in disaster relief through the United States Department of Housing and Urban Development's ("HUD") Community Development Block Grant program ("CDBG") to five states, including Louisiana.  (Rec. Doc. 1, ¶¶ 12, 14.)  Plaintiff claims HUD's authority to make CDBG funds available to states, tribes and local governments arises from the Housing and Community Development Act of 1974, ("HCDA"), 42 U.S.C. 5301 *et seq.*, and that the HCDA vests in local administrators, the powers to allocate federal fiscal resources for the purposes of achieving congressional established goals. *(Id., ¶ 14-16.)*  Plaintiff claims the day-to-day administration of the "federal" program is delegated to state and local authorities and that to receive HCDA funds, state and local authorities must go through an application and approval process. (Id., ¶¶ 16-19.) During early 2006, Louisiana submitted its application for CDBG funds.  On May 12, 2006, Louisiana submitted Amendment 1 to its original action plan known as the Road Home Programs. (Id., ¶ 21.)  Plaintiff claims the Road Home Program was administered by the Louisiana Office of Community Development ("OCD") and the Louisiana Recovery Authority ("LRA"). (Id., ¶ 22.)

---

[1]    Plaintiff brings her lawsuit as a purported class action. However, this matter has not been certified as a class action. Defendants request a dismissal of the class allegations.

Following damage to her home caused by the hurricanes, Plaintiff entered into a contract with the LRA on May 11, 2007, to obtain a Road Home Grant. (Id., ¶ 23-24.) Plaintiff claims the contract contained an enforcement provision notifying Plaintiff she may be prosecuted by federal, state and/or local authorities in the event that she makes or files false misleading and/or incomplete statements and/or documents. (Id., ¶ 26.)

Plaintiff claims Defendants sent her a collection letter on February 9, 2018, seeking to collect $4,598.89 in grant overpayment. (Id., ¶ 27.) The letter indicated the amount due for repayment was the result of Plaintiff's receipt of total insurance proceeds higher than the amount used to calculate her grant award. (Id., ¶ 28.) Plaintiff claims she disputed receiving $4,598.89 in insurance proceed overages. (Id., ¶ 29.) On April 10, 2018, Plaintiff claims Defendants sent correspondence breaking down the amount of grant overpayment she owed, which included $5,300.00 due to duplicated FEMA benefits, $1,269.85 in overpaid homeowners insurance proceeds, plus a $1,970.96 credit due to a decrease in an insurance penalty. (Id., ¶ 30.) Plaintiff claims Defendants provided her a document detailing the FEMA benefits she received. (Id., ¶ 31.) Defendants further indicated that Plaintiff's homeowner's insurance carrier electronically provided confirmation of the amount paid to Plaintiff in homeowner's insurance benefits; however, Plaintiff claims she was not provided this electronic confirmation. (Id., ¶¶ 32-33.)

Based upon the foregoing, Plaintiff sets forth two claims against Defendants under the FDCPA.

In her first claim, Plaintiff alleges Defendants violated the FDCPA, 15 U.S.C. §1692e(2)(A), (5), (10) and 1692f, pursuant to which a debt collector is prohibited from misrepresenting the "character, amount or legal status of any debt," threatening "to take any action that cannot legally be taken" or using any false or "deceptive means to collect or attempt

to collect" a debt and using "unfair or unconscionable means" to collect or attempt to collect any debt. (Rec. Doc. 1, ¶¶ 46-48.) Plaintiff claims the Road Home Program is a "federally sponsored" program and that by accepting responsibility for dispensing federal fiscal resources, Louisiana's OCD assumed "the quintessentially official role of administering a social service program established by the United States Congress," (Id., ¶¶ 49-51.) As a result, Plaintiff claims her action for money damages for breach of a government contract is somehow subject to a six-year statute of limitations. She also claims this same statute of limitations period applies to an action to recover for diversion of money paid under a grant program. (Id., ¶¶ 52-53.)

In addition, Plaintiff claims Defendants violated the FDCPA when they sent a letter to her dated February 9, 2018, more than ten years after she executed the May 11, 2007 Grant Agreement, and misrepresented the status of her obligation to repay the grant overpayment by implying Defendants could still pursue a claim for breach of contract and by threatening to take legal action against her. (Rec. Doc. 1, ¶¶ 54-57.) Plaintiff further alleges Defendants failed to notify Plaintiff her obligation to repay was judicially unenforceable (again, based on the theory that a Federal six year statute of limitations applies), and that any repayment of the excess grant funds could restart the statute of limitations. (Id., ¶ 58.)

In her second claim, Plaintiff alleges Defendants violated the FDCPA, 15 U.S.C. §1692e(10) and §1692f which prohibit a debt collector from using any "false or deceptive means:" to collect or attempt to collect a debt and from using "unfair or unconscionable means" to collect or attempt to collect any debt. (Rec. Doc. 1, ¶¶ 63-64.) Plaintiff claims Defendants' letter dated February 9, 2018, misrepresented that she received an unreported $4,598.89 in insurance proceeds. (Id., ¶¶ 65-66.) According to the Complaint, after Plaintiff disputed

receiving this amount, Defendants sent correspondence revealing there was only a $1,269.85 in unreported insurance proceeds. (Id., ¶ 67.)

As set forth herein, Plaintiff cannot maintain her claims under the FDCPA against Defendants and her claims should be dismissed in their entirety under Federal Rule of Civil Procedure 12(b)(6).

## II.     LAW AND ARGUMENT

### 1.     Standard for Motion to Dismiss.

Federal Rule of Civil Procedure Rule 12(b)(6) permits dismissal of a complaint "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss under 12(b)(6) attacks the legal sufficiency of the complaint. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The court must accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). Additionally, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff has an "obligation to provide the 'grounds' for his 'entitlement to relief,' [and that] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id*. When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *citing Twombly*, 550 U.S. at 557.)

In order for a complaint to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, at 570, 127 S.Ct. 1955). A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Only when there are well-pleaded factual allegations, should a court assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 664, 129 S. Ct. at 1940-41. Plaintiff's allegations fail to rise to this standard, and her claims should be dismissed.

### 2. Background of the Road Home Program

On August 29, 2005, Hurricane Katrina made landfall in Louisiana and Mississippi. The devastation from Hurricane Katrina and the subsequent flooding was compounded by Hurricane Rita, which made landfall in Louisiana on September 24, 2005. In response to this unprecedented disaster, Congress appropriated disaster recovery funds to the State of Louisiana, through HUD's Community Development Block Grant ("CDBG") Program to help restore Louisiana.

Louisiana received CDBG grants pursuant to the Department of Defense Appropriations Act ("Appropriations Act"), Public Law 109-148. Under the Appropriations Act, any funds provided to Louisiana were required to be administered through an entity designated by the Governor of Louisiana. On February 13, 2006, HUD issued its Notice of "Allocations and Common Application and Reporting Waivers Granted to and Alternative Requirements for CDBG Disaster Recovery Grantees under the Department of Defense Appropriations Act, 2006", Docket No. FR-5051-N-01. The purpose of the Notice was to advise the public of the allocations for grant funds for CDBG discovery recovery grants assisting in the recovery of the areas affective by Hurricanes Katrina, Rita and Wilma in 2005. (See U.S. Dept. of Housing and Urban Development; Notice Docket No. FR-5250-N-01 – Feb. 13, 2006.). The Notice also identified

several waivers provided to the State of Louisiana in connection with its obligations involving CDBG funds.

Importantly, HUD waived requirements under 42 U.S.C.§5306 and permitted <u>direct grants administration</u> by Louisiana to allow the State to use its disaster recovery grant directly to carry out state-administered activities. (*Id*., p. 7.)(emphasis added.) Notwithstanding, HUD required the State to comply with Section 313 of the Robert T. Stafford Disaster Assistance and Emergency Relief Act, 42 U.S.C. § 5155, which prohibits any person, business concern, or other entity from receiving financial assistance with respect to any part of a loss resulting from a major disaster as to which he has received financial assistance under any other program or from insurance of any other source. (*Id*., p. 10.) [2] HUD directed the State of Louisiana to submit an Action Plan for Disaster Recovery. The State's Action Plan was subject to numerous requirements, one of which required the State to certify it would comply with the Stafford Act above, by ensuring it had sufficient monitoring standards and procedures in place to prevent/address any duplication of benefits. (*Id*., p. 9.) Importantly, HUD placed the responsibility for review and handling of noncompliance directly with the State of Louisiana. (*Id*., p. 12.)

Through the Action Plans[3] required by HUD, the State of Louisiana created the Road Home Program to compensate affected Louisiana homeowners for their losses. The Road Home Program, which began in 2006, is a grant program created by the Louisiana legislature, funded

---

[2] The Appropriations Act stipulates that funds may not be used for activities reimbursable by or for which funds have been made available by the Federal Emergency Management Agency (FEMA) or the Army Corps of Engineers. (*Id*.)

[3] Action plans and other policies and procedures for procuring Community Development Block Grants undergo rigorous, multi-step processes, with multiple avenues of input and review, before they are finally approved by the State and HUD.

by CDBG grants, and operated by the Louisiana Recovery Authority (LRA)[4] to provide compensation to those who sustained unreimbursed damage to their homes during Hurricanes Katrina and Rita. *Groby v. Davis*, 575 F.Supp.2d 762 (E.D. La. 2008). Louisiana's Road Home Program, was developed as a means of compensation for affected homeowners, with a purpose to assist communities blighted by abandoned homes, clouded land titles, and disinvestments. La. Rev. Stat. Ann § 49:220.5.

The statutory provisions which created the LRA provided the LRA with the authority to establish, with the approval of HUD, a "clear and effective process for the implementation of action plans for the CDBG program."[5] La. Rev. Stat. Ann. § 49:220.4. [6] All Action Plans were

---

[4]    The LRA was formed by Executive Order on October 17, 2005. It is a Louisiana state agency created to administer funds for recovery from Hurricanes Katrina and Rita, including CDBG Disaster Recovery Grant Funds.

[5]    The LRA entered its sunset on June 30, 2010. The duty of administration of the Road Home Program passed from the LRA to the State of Louisiana, Office of Community Development, under the Louisiana Division of Administration. See http://doa.louisiana.gov/CDBG/dr/drhome.htm.

[6]    La. Rev. Stat. Ann. § 49:220.4 provides in pertinent part:

> A. (1)  The Louisiana Recovery Authority is hereby created as a **state agency** within the office of the governor, division of administration.  The authority shall be a body corporate with power to sue and be sued.  **The domicile of the authority shall be in the parish of East Baton Rouge**.  The purpose of the authority shall be to recommend policy, planning and resource allocation affecting programs and services for the recovery, to implement programs and provide services to the recovery, and to identify duplication of services relative to the recovery where appropriate. The authority shall carry out its functions to support the most efficient and effective use of resources for the recovery.
>
> (2)  The board shall provide leadership and oversight for the activities of the authority.
>
> (3) The authority shall have an executive director who shall be appointed by the governor and subject to confirmation by the Senate. The executive director shall serve at the pleasure of the governor and shall be paid a salary which shall be fixed by the governor.  The executive director shall be responsible to the governor and the board.

La. Rev. Stat. Ann. § 49:220.4.

submitted to the Governor of the State of Louisiana for approval, and then submitted to the Joint Legislative Committee on the Budget for approval. All Action Plans were simultaneously submitted for review to the appropriate oversight committee of the Louisiana House of Representatives and Senate.

Notably, the LRA, not the federal government, was solely responsible for the development and implementation of the Road Home grant program. Although HUD provided the CDBG funds to Louisiana, the State of Louisiana was responsible for the Road Home Program. (Exhibit A, Declaration of Jessie Handforth Kome, March 6, 2009, ¶ 15.) [7] HUD's role was confined to ensuring Louisiana's interpretation of the statutory and regulatory requirements were "not plainly inconsistent with the Act." 24 C.F.R.§ 570.480(c). HUD also provided technical assistance which typically involved consultation with the State of Louisiana to determine the state's objectives and its proposed program designs. Additionally, HUD provided advice, training, or program models to ensure the State of Louisiana complied with CDBG program requirements while carrying out its purpose and implementing its program. Importantly, however, HUD did not make any of Louisiana's program decisions and it did not set any funding strategies in the Road Home Program. (See Exhibit A, ¶¶ 3, 8, 9, 15, 16, 18.)

As HUD's representative has stated:

> *The Road Home Program is **administered by the State of Louisiana** through the Louisiana Office of Community Development and the Louisiana Recovery Authority and is funded by HUD through the CDBG Program. **The State of Louisiana is responsible for the implementation, design, and administration of***

---

[7]     Ms. Kome is the Deputy Director, Office of Block Grant Assistance ("OBGA"), Office of Community Planning and Development ("CPD"), U.S. Department of Housing and Urban Development ("HUD"). Her affidavit was provided in Civil Action No. 08-1938, *Greater New Orleans Fair Housing Action Center, et al. v. U.S. Department of Housing and Urban Development, et. al.*, United States District Court for the District of Columbia, which involved claims of discrimination in the formula developed by the LRA for computing Road Home Grant awards.

*the Road Home Program in conformance with the applicable CDBG Program requirements set by HUD*.

(Exhibit A, ¶1.) (emphasis added.)

Thus, although the Road Home program involved the use of CBDG funds from HUD, it was indisputably a state-designed and controlled disaster recovery program. Notably, it was Louisiana – not the federal government - who decided to base the amount of the compensation and incentive grants[8] on the lower of the pre-storm, fair market value of the home, or the cost to repair the home. (Exhibit A, ¶18.) (emphasis added). Applicants of the program, such as Plaintiff, had three basic options for compensation grants, and the maximum grant could not exceed $150,000. Under Option 1, an individual whose home was damaged may choose to receive a grant and keep his/her home.[9] Option 2 provides grants for homeowners to sell their homes to Louisiana and purchase another home in the state and Option 3 provides grants for homeowners to sell their homes to Louisiana and move outside of Louisiana. Once approved, it was Louisiana with whom grant recipients entered into a Grant Agreement, setting forth various obligations and duties, including, the obligation to repay any overpayment of grant funds.

### 3. Plaintiff's Road Home Grant

During November 2006, Plaintiff applied to the Road Home program seeking a grant for damage to her home located at 217 Jacqueline Drive, Slidell, Louisiana She selected Option 1 under the program. On November 16, 2006, in connection with her application, Plaintiff submitted an award letter indicating she received $5,200.00 in FEMA benefits. (Rec. Doc. 1-3.) She also submitted two check stubs showing insurance payments totaling $14,733.29 in

---

[8] Louisiana ultimately chose to provide compensation and incentive grants to eligible homeowners affected by Hurricanes Katrina or Rita, of up to $150,000.00.

[9] This grant is based on the lesser of two values: 1) the value of the home prior to the storms or 2) an assumed cost of repairing the home based, not on actual damages, but on modest averages.

homeowner's insurance benefits. (Id.) These figures were used to calculate Plaintiff's Road Home Grant. (Id.) Plaintiff's application was approved and she received Road Home Grant 06HH050655 in the amount of $33,392.68. (Rec. Doc. 1-3, p. 7.) On May 11, 2007, Plaintiff executed several contractual agreements related to her receipt of a Road Home Grant, including The Road Home Declaration of Covenants Running with the Land Hurricane Katrina/Hurricane Rita; State of Louisiana Division of Administration Office of Community Development (OCD) The Road Home Program Grant Agreement Homeowners Grant No. 06HH050655; and The Road Home Limited Subrogation/ Assignment Agreement. (See Rec. Doc. 1-1.)[10]

In the Grant Agreement **Plaintiff agreed to repay** **the State of Louisiana** any Grant funds received from her submission of false, misleading or incomplete statements or documents:

> Homeowner(s) asserts, certifies and reaffirms that all information on the application, documents provided and closing documents are true to the best of my/our knowledge and Homeowner(s) acknowledges that such have been relied on by OCD to provide disaster assistance. Homeowner(s) certifies that all damages claimed in connection with Homeowner(s) application for grant proceeds were a direct result of the declared disaster, and that **Homeowner(s) have disclosed to OCD all insurance proceeds and other funds received from governmental agencies as compensation for damages as a result of the declared disaster in the application process.** Homeowner(s) acknowledge that Homeowner(s) may be prosecuted by Federal, State and/or local authorities in the event that Homeowner(s) make or file false, misleading and/or incomplete statements and/or documents. **Homeowner(s) agree to repay the Grant in the event Homeowner(s) make or file false, misleading and/or incomplete statements and/or documents**. Homeowner(s) acknowledges notice of the danger of fraud and scams perpetrated by unscrupulous contractors and businesses and that the State has provided an Office of Fraud to address such issues.[11]

---

[10]     In the application process, applicants, including Plaintiff, were required to identify any other proceeds obtained from FEMA and their homeowner insurance policies. Applicants were required to execute several agreements related to their receipt of funds, including The Road Home Declaration of Covenants Running with the Land Hurricane Katrina/Hurricane Rita; State of Louisiana Division of Administration Office of Community Development (OCD) The Road Home Program Grant Agreement Homeowners; and The Road Home Limited Subrogation/ Assignment Agreement. Plaintiff executed each of these agreements.(See Rec. Doc. 1-1.)

[11]     Plaintiff's Grant Affidavit contains a similar provision. See Rec. Doc. 1-1, p. 11.)

(See Rec. Doc. 1-1, p. 7) (emphasis added.)

In the Limited Subrogation/Assignment Agreement, **Plaintiff assigned to the State of Louisiana** any recovery of funds she received from insurance or FEMA:

In consideration of my/our receipt of funds under The Road Home program for Hurricane Katrina/Hurricane Rita victims (the *"Program")* being administered by the Office of Community Development, Division of Administration, State of Louisiana subject to the provisions below I/we hereby **assign to the State of Louisiana, Division of Administration, Office of Community Development** (the *"State"),* to the extent of the grant proceeds awarded or to be awarded to me under the Program, all of my/our claims and future rights to reimbursement and all payments hereafter received or to be received by me/us (a) under any policy of casualty or property damage insurance or flood insurance on the residence, excluding contents *("Residence")* described in my/our application for Homeowner's Assistance under the Program *("Policies");* (b) from FEMA, Small Business Administration, and any other federal agency, arising out of physical damage to the Residence caused by Hurricane Katrina and/or Hurricane Rita. Such Policies include, but are not limited to, insurance policies characterized as homeowner's, wind, flood or any other type of casualty or property damage or hazard insurance coverage under which I/we have or may assert any claim for physical damage to the Residence due to Hurricane Katrina or Hurricane Rita.

… **If I/we hereafter receive any Federal Assistance Payments for physical damage to the Residence (not including contents), I/we agree to promptly pay such amount to the State if that amount would have reduced the amount of my Program grant had I/we received such Federal Assistance Payment prior to my receipt of grant proceeds**. For Federal Assistance Payments, this assignment shall not apply to benefits specifically calculated to be in excess of the amount of my/our grant received under the Program.

If I/we hereafter receive any insurance payments for physical damage to the Residence (not including contents) caused by Hurricane Katrina or Hurricane Rita, **I/we agree to promptly pay such amount to the State if that amount would have reduced the amount of my Program grant had I/we received such insurance payments prior to my receipt of grant proceeds**…

I/We agree that rights to insurance proceeds **assigned to the State** herein shall be paid from any insurance payments I/we may receive, whether through unconditional tender by the insurance carrier, through settlement, or through judgment adverse to the insurance company, with preference and priority over any other party entitled to any portion of such proceeds, up to the amount of my/our grant received under the Program for which the **State has not been reimbursed** from other sources. The **State's right for recovery** shall be with preference and

13

priority as set forth above, from those portions of my/our recovery related to physical damage to the Residence and of any penalties under the provisions of La. R.S. 22:1220 and/or La. R.S. 22:658 relating to those insurance proceeds. If I/we am now or in the future become represented by an attorney in connection with such insurance claims, I/we hereby agree that any funds received from which the **State may be entitled to recovery** shall by subject to Rule 1.15(e) of Louisiana Rules of Professional Conduct and hereby instruct my/our attorney to handle any such payments in compliance with that Rule.

I/We hereby agree that the **State's written consent** shall be required to settle any claim which would result in the **State's recovering** less than one hundred (100%) percent of the amount of my/our grant received under the Program. Request for such consent shall be directed to the Division of Administration, Office of Community Development, Legal Counsel for Disaster Recovery Unit….

(See Rec. Doc. 1-1, p.8.) (emphasis added.)

As evidenced above, Plaintiff's contractual agreements for her Road Home Grant were clearly with the State of Louisiana – not the federal government.

### 4. Defendants' Communications with Plaintiff

Subsequently, as part of the State's Grant Recapture process, a review of Plaintiff's Road Home Grant file was undertaken which revealed discrepancies with the amounts Plaintiff reported receiving from FEMA and her insurer.  A subsequent FEMA application overview showed Plaintiff received $5,200.00 from FEMA on October 4, 2005. (See Rec. Doc. 1-3, p.8.) However, this same document also showed on November 8, 2005, that Plaintiff received an underlined additional $5,300.00, for a total of $10,500.00 in FEMA benefits.  (Id.)  In addition, Plaintiff's homeowners' insurer provided documentation showing Plaintiff received $16,003.14 in insurance benefits, an amount greater than that Plaintiff reported in her grant application. (Id., p. 4.)  Based on this information, Plaintiff's Road Home grant should have been $28,793.79.[12]  (Id., p. 6.)  Accordingly, Plaintiff received a grant  overpayment in the amount of $4,598.89, which,

---

[12]     This figure included a decrease in the amount assessed as a penalty against Plaintiff for not carrying flood insurance on her home.

pursuant to her Grant Agreement, cited above, she was required to repay. (Id., p. 5.)

On October 26, 2016, The Road Home Program provided Plaintiff notice of the overpayment and requested Plaintiff review the discrepancies in the amounts she reported in FEMA and homeowner's benefits. The Road Home Program sent a second notice to Plaintiff dated December 14, 2016 concerning the grant overpayment. On January 26, 2017, Plaintiff, through her attorney, disputed the amounts identified as incorrectly reported.

In the interim, in connection with the grant recapture program, Defendants were hired by the state to assist with recapture efforts of those Grants determined to be non-compliant, whether due to failure to establish compliance or for failure to repay overpayments of Road Home Grants. On February 8, 2018, Defendants sent Plaintiff a letter advising that she received a grant overpayment and that in accordance with her Grant Agreement obligations, she was required to repay $4,598.89 to the state. (See Rec. Doc. 1-2.) After receiving notice from Plaintiff's representative, on April 10, 2018, Defendants provided Plaintiff's counsel, a breakdown of the amount owed along with supporting documentation showing the calculations and information used in computing the amount of the overpayment. (Rec. Doc. 1-3.) Thereafter, Defendants received no further communications from Plaintiff until she filed the instant lawsuit.

5. **Plaintiff Cannot Show Defendants Violated the FDCPA, 15 U.S.C. 1692e(2)(A), (5), (10) and 1692f.; Plaintiff's Obligation to Repay the Grant Overpayment is Not Time Barred**

### i. Plaintiff's Obligation to Repay the Grant Overpayment is Not Time-Barred

Even should the FDCPA apply in this case, which Defendants deny, Plaintiff's claims under the FDCPA nevertheless fail, as the debt was not in fact time-barred.

The FDCPA bars debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including "the threat to

take any action that cannot legally be taken," and "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id*. § 1692e(5), (10). Section 1692e furnishes a nonexclusive list of prohibited practices, such as falsely representing the character or legal status of the debt and threatening to take legal action that cannot be taken. 15 U.S.C. § 1692e(2)(A), (5). The FDCPA also prohibits debt collectors from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt." *Id*., §1692f. Section 1692f also furnishes a non-exhaustive list of prohibited practices.

Courts in this Circuit typically address these provisions together. See *Daugherty v. Convergent Outsourcing, Inc*., 836 F.3d 507 (5th Cir. 2016). The Fifth Circuit has held that threatening to sue on time-barred debt <u>may</u> constitute a violation of the FDCPA. *Castro v. Collecto, Inc*., 634 F.3d 779, 783 (5th Cir. 2011)("threatening to sue on time-barred debt may well constitute a violation of the FDCPA."); *Daugherty*, *supra*. (court extended holding in *Castro*, and held a collection letter that is silent on litigation, but which offers to settle a time-barred debt without stating the debt is judicially enforceable, "could" violate the FDCPA.)

Here, Plaintiff claims Defendants violated the FDCPA by seeking repayment of a "time-barred" obligation." Plaintiff claims any action against her for breach of the Road Home Grant Agreement is an action for money damages for breach of a government contract and /or for diversion of money paid under a grant program and is subject to a six-year statute of limitations. However, Plaintiff is incorrect. The Road Home Grant received by Plaintiff was <u>not</u> a federal grant and her Grant Agreement was <u>not</u> a federal contract.

Although the initial funds were provided by HUD's CDBG program, the State of Louisiana created the Road Home Program to compensate homeowners such as Plaintiff. The Road Home Program was operated by the Louisiana Recovery Authority (LRA). The LRA

submitted Action Plans to Louisiana's Governor and Legislature for approval. The State of Louisiana was **solely responsible** for the development and implementation of the Road Home grant program. (See Exhibit A.) The State of Louisiana decided the amount of compensation and incentive grants eligible homeowners could receive. And, most importantly, it was the State of Louisiana with whom grant recipients entered into a Grant Agreement, setting forth various obligations and duties, including, the obligation to repay any overpayment of grant funds.

The Road Home Grant Agreement and other closing documents for Plaintiff's Road Home Grant executed in May 2007 were between Plaintiff and the State of Louisiana, Division of Administration, Office of Community Development – not the federal government. Certainly, the federal government is not a party or signatory to any of the documents executed by Plaintiff in May 2007 evidencing her receipt of Grant Funds and/or her obligations under The Road Home Program. As a result, Plaintiff's obligation to repay the Road Home Grant overpayment is <u>not</u> subject to the federal six-year statute of limitations; it is subject to Louisiana's ten-year prescriptive period for breach of contract claims, and; thus, is <u>not time-barred</u> under Louisiana law.

During October 2008, the State discovered Plaintiff received additional FEMA assistance and homeowner's insurance benefits and that these amounts had not been provided by Plaintiff in connection with the computation of her Road Home Grant. Thereafter, Defendants were hired to collect the grant overpayment received by Plaintiff through the State's Road Home Program based on the terms of her contractual agreements with the State, and the explicit obligation to repay thereunder When Defendants first communicated with Plaintiff in February 2018, seeking repayment of her Road Home grant overpayment Plaintiff's obligation to repay these funds was

<u>not</u> time-barred under Louisiana's ten-year prescriptive period set forth in LSA C.C. art. 3499.[13] Thus, Defendants did not violate the FDCPA in seeking to recover Plaintiff's overpayment pursuant to the terms of her agreement with the State within this ten-year prescriptive period.[14]

The <u>only</u> way for Plaintiff to survive this motion to dismiss is to show her obligation to repay the Road Home Grant overpayment was time-barred under the Federal six year statute of limitations on the date Defendants sent her correspondence seeking repayment of the grant overpayment, which she cannot do. Plaintiff's obligation to repay the grant overpayment is not time-barred; it is subject to Louisiana's ten-year prescriptive period and her claim against Defendants under FDCPA, 15 U.S.C. §1692e(2)(A), (5), (10) and §1692f should be dismissed with prejudice.

### ii. <u>There was Nothing Deceptive, False, Unfair or Unconscionable in Defendants' Communications to Plaintiff</u>

As noted above, 15 U.S.C. §§1692e and f prohibit "any false, deceptive, or misleading representation" and the use of "unfair or unconscionable means" to collect or attempt to collect any debt. The prohibitions can include falsely representing the character or legal status of the debt and threatening to take legal action that cannot be taken. 15 U.S.C. §§1692e(2)(A), (5), and f. Courts in this Circuit typically address these provisions together. See *Daugherty v. Convergent Outsourcing, Inc.*, *supra*. While this Circuit holds a failure of a debt collector to advise a debt is time-barred may violate the FDCPA, there was <u>no</u> deception in Defendants'

---

[13]     LSA. C.C. art. 3499 provides:
> Unless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years.

Any claim against Plaintiff remains timely at this time as the prescriptive period for Plaintiff's breach of the Grant Agreement, Limited Subrogation Agreement or Covenants Agreement has not expired.

.

communications to Plaintiff, because Plaintiff's obligation to repay the excess grant funds she received is <u>not</u> time-barred.

Plaintiff's claim under 15 U.S.C. §1692e (10) and §1692f is based on her mistaken belief that her obligation to repay the excess grant funds she received is subject to a six-year Federal statute of limitations, and that her claim that Defendants' correspondence changed the amount of insurance proceeds she received.

First, as stated above, Plaintiff's repayment obligation under the Grant Agreement is subject to Louisiana's ten-year liberative prescriptive period for breach of contract claims, as set forth in LSA C.C. art. 3499, *supra*. Any action against her for repayment of the excess grant funds was not "time-barred" when Defendants sent Plaintiff correspondence seeking repayment. Therefore, as a matter of law, there was (and could be) nothing deceptive, false, unfair or unconscionable about Defendants' correspondence to Plaintiff.

Second, Defendants' communications did not change the amount of insurance proceeds Plaintiff received. Defendants' first letter in February 2018 advised Plaintiff she was required to repay the State the sum of $4,598.89. (Rec. Doc. 1-2.) Defendants' second letter in April 2018 did not change this figure. Rather, Defendants provided an itemization of the figures reported by Plaintiff in FEMA and insurance benefits compared to the figures Defendants obtained from FEMA and Plaintiff's homeowner's insurer showing Plaintiff's underreporting of benefits and the same sum of $4,598.89 due to the state. (Rec. Doc. 1-3.) There was nothing false or deceptive in either of Defendants' communications. Defendants did not violate Sections 1692e or 1692f in seeking repayment of Plaintiff's grant overpayment to the State of Louisiana. Plaintiff's claim for violation of FDCPA, 15 U.S.C. §1692e(10) and §1692f should be dismissed with prejudice.

### iii.   The FDCPA Should Not Apply to Plaintiff's Claims

Notwithstanding the above, defendants further submit that the FDCPA should not apply in this case. The FDCPA, which became effective in March 1978, was designed to eliminate abusive, deceptive, and unfair debt collection practices, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect **consumers** against debt collection abuses. 15 U.S.C. §1692. (emphasis added.) The FDCPA applies <u>only</u> to the collection of a "debt" incurred by a consumer. Therefore, to state a claim under the FDCPA, a plaintiff's allegations <u>must</u> establish that the money being collected qualifies as a "debt." See 15 U.S.C. § 1692a(5). Importantly, the mere obligation to pay does not constitute a debt; rather, a "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). In addition, a "transaction" within the FDCPA is "a transaction in which a consumer is *offered or extended the right* to acquire 'money, property, insurance or services' ... and to defer payment." *Zimmerman v. HBO Affiliate Group, 834 F.2d 1163, 1167 (3d Cir.1987).,* 834 F.2d at 1168 (emphasis added). "[T]he paradigmatic example of a 'transaction' is when a person is *given* the opportunity to enjoy a commodity or service now, and pay later." *Vosatka v. Wolin–Levin, Inc.,* No. 94–C–4129, 1995 WL 443950, at *3 (N.D.Ill. July, 21, 1995) (emphasis added).

It is Plaintiff's burden to show her obligation to repay the excess grant funds constitutes a consumer debt as defined under the FDCPA, otherwise her claim fails. See *Boosahda v. Providence Dane LLC*, 462 F. App'x 331, 336 (4th Cir. 2012)(affirming summary judgment in favor of defendant where plaintiff failed to establish element of FDCPA claim that credit card

debt was consumer debt).  Here, Plaintiff cannot meet this burden; as the Road Home Grant received by Plaintiff is not a consumer debt for purposes of the FDCPA. When determining whether a debt is a "consumer debt" for purposes of consumer protection laws, courts focus on the **nature of the debt** that was incurred, and not the purpose for which the account was opened. *Vick v. NCO Fin. Sys., Inc*., No. 2:09-CV-114-TJW-CE, 2011 WL 1195941, at *5 (E.D. Tex. Mar. 7, 2011).  When analyzing the nature of  debt, the relevant inquiry is the debtor's "use" of the **loaned funds**. See *Garcia v. LVNV Funding,* No. A-08-CA-514-LY, 2009 WL 3079962, at *3 (W.D. Tex. Sept. 18, 2009)(citing *Bloom v. IC Sys., Inc*., 753 F. Supp. 314, 317 (D. Or. 1990)).

Following Hurricanes Katrina and Rita in 2005, homeowners, such as Plaintiff, underwent an application and approval process and were provided **grants** through The Road Home Program as a form of **disaster compensation** so they could repair/rebuild their homes. Upon receiving a Road Home Grant, homeowners, such as Plaintiff, entered into contractual agreements with the State of Louisiana and agreed to certain covenants and obligations, one of which was the obligation to repay any grant funds received in error as a result of false, misleading or incomplete information provided to the State. (See Rec. Doc. 1-1.)

To be sure, the Grant funds received by Plaintiff, or any other Road Home Grant recipient, would <u>never</u> have to be repaid <u>unless</u>: a) the grant recipient was determined to have not been eligible for the Grant; b) the terms of compliance set forth in the contractual agreements were not met; or c) the amount of the Grant was determined to have been calculated in error based on the information available at the time of the Grant disbursement.  Absent the foregoing limited events, the Road Home Grant recipients had no obligation to repay the grant funds; there were no repayment terms set forth in any of the grant closure documents and there were no

contractual interest or late charges. Rather, the obligations assumed in the Grant Agreement and closure documents were in place to ensure the grant funds were used appropriately, not to create a promise to repay the funds, and certainly not to create a consumer debt. Rather, the intent and purpose of the grants were to provide disaster assistance to Louisiana homeowners, such as Plaintiff, and compensation to assist in their repair and rebuilding efforts. This is clearly not the typical creditor/debtor relationship envisioned, or covered, by the FDCPA, which, by its express terms, involves consumer debts and transactions for services rendered. [15] Therefore, Defendants submit the FDCPA does not apply in this case and Plaintiff's claims fail as a matter of law.

## CONCLUSION

For the reasons set forth hereinabove, Plaintiff's claims against Defendants under the FDCPA fails as a matter of law. Defendants respectfully ask this Court to grant this Motion and dismiss with prejudice Plaintiff's claims in their entirety.

Respectfully Submitted,

**FRILOT LLC**

*s/Allen J. Krouse*
**DAVID S. DALY (La. No. 20774)**
**ELLIOT M. LONKER (La. No. 24527)**
**ALLEN J. KROUSE, III (La. No. 14426)**
1100 Poydras St., Suite 3700
New Orleans, LA 70163
Daly Phone:     (504) 599-8329
Daly Fax:          (504) 599-8139
Daly Email:      DDaly@Frilot.com
Krouse Email:  akrouse@frilot.com
*Counsel for Defendants, Shows, Cali &*
*Walsh, LLP, Mary Catherine Cali, and*
*John C. Walsh*

---

[15] Similarly, courts have found that efforts to collect tax debt, child support payments, and fines do not fall within the FDCPA. *See McAgee v. IRS*, 2017 WL 2794242 (N.D. Ga. 5/15/17), and cases cited therein.

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of September, 2018, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. All counsel of record are being served this filing by either the court's electronic filing system or by telefaxing and/or placing a copy of same in the United States mail, properly addressed and with adequate postage affixed thereon.

*s/Allen J. Krouse*