UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**GREATER NEW ORLEANS FAIR HOUSING**　)
**ACTION CENTER,** *et al.,*　)
　)
　　Plaintiffs,　)　　No. 1:08-cv-1938-HHK
　)
　　v.　)
　)
**U.S. DEPARTMENT OF HOUSING AND**　)
**URBAN DEVELOPMENT,** *et al.,*　)
　)
　　Defendants.　)

## DECLARATION OF JESSIE HANDFORTH
## KOME SUBMITTED IN SUPPORT OF DEFENDANT
## U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

I, Jessie Handforth Kome, hereby declare the following:

1.　I am the Deputy Director, Office of Block Grant Assistance ("OBGA"), Office of

Community Planning and Development ("CPD"), U.S. Department of Housing and Urban

Development ("HUD"). I have held this position since February 2009. From August 2007 to

February 2009, I was the Director, Disaster Recovery and Special Issues Division ("DRSI"), in

the OBGA. In my DRSI capacity, my duties included general oversight responsibility for grants

made from emergency supplemental appropriations of Community Development Block Grant

("CDBG") funds for recovery from certain Presidentially-declared disasters. Prior to this, I was

a Community Planning and Development Specialist in DRSI. In that capacity, I was responsible

for drafting program technical information and requirements, training grantees, and

administering the reporting system for disaster recovery grants. I submit this declaration in

support of Defendant HUD's Motion to Dismiss for Lack of Jurisdiction in the above-captioned

action. I base this declaration on personal knowledge and on information obtained in my official

**EXHIBIT "A"**

capacities as Director of the DRSI and as a Community Planning and Development Specialist at DRSI.

### The Housing and Community Development Act of 1974

2.      The Housing and Community Development Act of 1974 ("HCDA" or "Act"), as amended, 42 U.S.C. § 5301 *et seq.*, seeks to develop viable urban communities by providing decent housing, a suitable living environment, and expanding economic opportunities, principally for persons of low and moderate income. The statute authorizes HUD to make grants, known as Community Development Block Grants ("CDBG") to states, tribes, and local governments to carry out activities in accordance with provisions of the Act, and sets out 25 broad categories of activities for which grantees may use funds. The Act requires that not less than 70 percent of grant funds be used for the benefit of low- and moderate-income persons. The Act is a federal block grant statute, under which the day-to-day administration of the federal program, including the actual expenditure of federal funds, is delegated to state and local authorities.

3.      The HCDA distributes funds appropriated by Congress through recipients outside the federal government. HUD's role is confined to ensuring that the state's interpretation of the statutory and regulatory requirements "are not plainly inconsistent with the Act." 24 C.F.R. § 570.480(c) (giving "maximum feasible deference" to a state's interpretation of these requirements).

4.      To obtain federal funds, state or local authorities must develop a five-year consolidated plan that assesses housing and homeless needs, analyzes the states' or local authorities' housing markets, sets forth their strategic plans for meeting priority needs, and sets out action plans. The action plans, in turn, must include required certifications that the

applicants will comply with the requirements of the program. 24 C.F.R. § 570.485, *id.* Part 91,

Subparts C & D.

5.    HUD's regulations implementing the HCDA require grantees to certify that their

projected use of funds "will give maximum feasible priority to activities . . .[(i)] of benefit to

low- and moderate-income families, . . .[(ii) that seek] elimination of slums and blight, [or (iii)

that seek] to meet other community development needs having a particular urgency because

existing conditions pose a serious threat to health and welfare." 24 C.F.R. § 570.483. The

regulations provide that an activity generally will be considered to meet the national objective of

benefit to low and moderate income persons if: (i) the activity benefits an area that is at least 51

percent low and moderate income; (ii) the activity benefits a limited low-and moderate-income

clientele, including services or facilities for the homeless, abused children, the elderly, or

migrant farm workers; (iii) the activity provides or improves permanent housing to be occupied

by a low- or moderate-income person; or (iv) the activity is designed to create permanent jobs

where at least 51 percent of the jobs will be held by or made available to low- and moderate-

income persons. *Id.*

6.    A CDBG grantee is also responsible for meeting all program requirements. Each

activity must be an eligible one as defined by the statute, meet a national objective, and have

been through citizen participation as part of the action plan development and submission process.

Grantees must be able to account for all grant funds, comply with all reporting requirements,

perform environmental reviews, and meet all applicable relocation, fair housing, equal

opportunity, and labor standards. 24 C.F.R. § 570.487-491.

7.    After developing proposed plans, the applicants must publish the plans for citizen

comment. 24 C.F.R. § 91.115; *id.* § 91.320. The applicants then submit the plan, summaries of

citizen comments, and signed certifications to HUD. *Id; see also id.* § 91.325.

8.     A grantee may request and receive technical assistance from HUD program staff at any time. HUD's technical assistance typically involves consultation with the grantee to determine the grantee's objectives and its proposed program designs. HUD then provides advice, training, or program models that will ensure the grantee will be able to comply with CDBG program requirements while carrying out its purposes and implementing its programs.

9.     HUD's review of the applicant's plan is limited. 24 C.F.R. § 91.500. HUD has 45 days to review the plan, and the plan is deemed approved unless HUD notifies the jurisdiction within the 45-day period that the plan is disapproved. *Id.* § 91.500(a). HUD only may disapprove a plan if it is inconsistent with the purposes of the Act, is substantially incomplete, the certifications are not acceptable, or if HUD determines that the applicant has not complied with the CDBG requirements. *Id.* § 91.500(b). The regulations do not permit HUD to disapprove an application based on the grantee's choice of eligible activities. *Id.*

10.     In order to ensure that CDBG funds are not misused, the HCDA authorizes HUD to audit the records of HCDA programs, and to recover improperly expended funds. HUD may take corrective actions ranging from issuing a warning letter to instituting collections procedures to recover improperly expended funds. 24 C.F.R. § 570.495. After reasonable notice and opportunity for a hearing, HUD may terminate, reduce, or limit the availability of payments to a grant recipient for failure to substantially comply with the provisions of the Act. 24 C.F.R. § 570.496(b), (d). The statute further authorizes the Department of Justice, upon a referral from HUD, to bring a civil action to recover misspent or misused CDBG funds. 24 C.F.R. § 570.496(c).

**Pub. L. Nos. 109-148, 109-234, and 110-116**

11.     In response to the 2005 Hurricanes Katrina, Rita, and Wilma, Congress passed three special appropriations to provide disaster recovery CDBG funds to affected areas in five

4

states, including Louisiana. *See* Pub. L. No. 109-148, 119 Stat. 2779 (Dec. 30, 2005) (the "first appropriation"); Pub. L. No. 109-234, 120 Stat. 418 (June 15, 2006) (the "second appropriation"); and Pub. L. No. 110-116, 121 Stat. 1343 (Nov. 13, 2007) (the "third appropriation"). The first appropriation provided $11,500,000,000 in CDBG funds to the affected states, which Congress directed to "be administered through an entity . . . designated by . . . each State." Pub. L. 109-148. This appropriation required HUD to "waive, or specify alternative requirements for, any provision of any statute or regulation[, including the HCDA and its implementing regulations] that [HUD] administers in connection with the obligation by [HUD] or the use by the recipient of these funds or guarantees," except for requirements related to fair housing, nondiscrimination, labor standards, and the environment, "upon a request by the State that such waiver is required to facilitate the use of such funds or guarantees, and a finding by the Secretary that such waiver would not be inconsistent with the overall purpose of the statute, as modified." *Id.* The first appropriation also authorized HUD to "waive the requirement [of the HCDA] that activities benefit persons of low and moderate income, except that at least 50 percent of the funds made available under this heading must benefit primarily persons of low and moderate income unless [HUD] otherwise makes a finding of compelling need." *Id.* The appropriation required HUD to "publish in the Federal Register any waiver of any statute or regulation." *Id.* The appropriation also provided that it would not lapse. *Id.* (providing that the funds will "remain available until expended."). Finally, the appropriation required, prior to the obligation of these funds to each state, that the state submit a plan to HUD "detailing the proposed use of all funds, including criteria for eligibility and how the use of these funds will address long-term recovery and restoration of infrastructure." *Id.*

12.     The second appropriation provided an additional $5,200,000,000 in CDBG funds to the affected states and authorized (although it did not require) HUD to make these same

statutory and regulatory waivers authorized by the first appropriation. Pub. L. No. 109-234.
This appropriation earmarked $1,112,650,000 for affordable rental housing programs. *Id.* The
remainder of the second appropriation was substantially identical to the first. The third
appropriation provided an additional $3,000,000,000 "solely for the purpose of covering costs
associated with otherwise uncompensated but eligible claims that were filed on or before July 31,
2007, under the Road Home program administered by the State in accordance with plans
approved by the Secretary." Pub. L. No. 110-116.

### HUD Waivers of CDBG Program Requirements
### and Louisiana's Action Plan for CDBG Disaster Recovery Funds

13.    On February 13, 2006, HUD published a Federal Register notice implementing
the requirements of the first appropriation. 71 Fed. Reg. 7666 (Feb. 13, 2006). HUD allocated
$6,210,000,000 of the first appropriation to Louisiana. As directed by Congress in the first
appropriation, HUD waived many standard certifications of the CDBG program, including the
requirement that 70 percent of funds be used for activities that benefit low- and moderate-income
persons, in order "to give grantees even greater flexibility to carry out recovery activities within
the confines of the CDBG program national objectives." 71 Fed. Reg. at 7667. In their place,
HUD substituted alternative certifications. Pursuant to the first appropriation, HUD required the
states to certify that activities funded "be for necessary expenses related to disaster relief, long-
term recovery, and restoration of infrastructure in the most impacted and distressed areas related
to the consequences of the hurricanes." *Id.* at 7670. As also directed by the first appropriation,
HUD required that, overall, at least 50 percent of disaster recovery grant funds be used for
activities that principally benefit low- and moderate-income persons. *Id.* at 7667; *see also id.* at
7668. As further directed by the first appropriation, HUD still required the state to certify that it
will affirmatively further fair housing, "which means that it will conduct an analysis to identify

6

impediments to fair housing choice within the state, take appropriate actions to overcome the effects of any impediments identified through that analysis, and maintain records reflecting the analysis and actions in this regard." *Id.* at 7671. HUD did not waive the CDBG program's financial accountability requirements.

14.    Louisiana submitted its first action plan in early 2006 and made all required alternative certifications at that time, including the certification that the state would affirmatively further fair housing. As is required by the CDBG program, the state already had produced a pre-storm Analysis and Impediments ("AI") to fair housing. HUD advised Louisiana to review its AI post-storm and make any updates the state deemed necessary. Louisiana later made these same certifications to obtain funds from the second and third appropriations.

### Louisiana's Road Home Program and HUD's
### Role in Reviewing, Approving and Monitoring the Program

15.    On May 12, 2006, Louisiana submitted Amendment 1 to its original action plan, known as the Road Home Program. The program consists of: (i) homeowner compensation and incentives programs; (ii) workforce and affordable rental housing programs; (iii) homeless housing programs; and, (iv) developer incentive programs. The Road Home program is administered by the State of Louisiana through the Louisiana Office of Community Development and the Louisiana Recovery Authority and is funded by HUD through the CDBG program. The State of Louisiana is responsible for the implementation, design, and administration of the Road Home program in conformance with the applicable CDBG program requirements set by HUD.

16.    In designing the Road Home homeowner compensation and incentives program, Louisiana requested, and HUD provided, some technical assistance. The state evaluated the relative costs of implementing a housing rehabilitation and reconstruction program as compared to implementing a homeowner compensation and incentives program. State staff called HUD

7

staff several times a week throughout 2006 regarding the details of the homeowner program design. HUD's guidance focused on how the activity could meet CDBG national objectives and how the state could manage the program to account for all program funds while meeting the disaster recovery purpose of the supplemental appropriations. HUD did not make *any* of the state's program decisions or set *any* funding strategies in the Road Home Program. Most of HUD's technical assistance was provided by telephone.

17.    Part of the technical assistance HUD provided to state staff concerned sound financial management principles. Financial management principles guide the grantee in the design of a program that provides the smallest amount of resources necessary to achieve a desired result. HUD explained to state staff that, for example, the compensation and incentives program launched by the state of New York following September 11, 2001, provided no more than $14,500 to any household and achieved success in meeting its goals. The city of Grand Forks, North Dakota, provided $5,000 loan payments as incentives to homeowners who remained in the city for disaster recovery after floods in 1997 caused significant damage to the city and its residences.

18.    As it developed the Road Home program, Louisiana ultimately chose to provide compensation and incentive grants to eligible homeowners affected by Hurricanes Rita or Katrina of up to $150,000. Louisiana decided to base the amount of the compensation and incentives grant on the lower of the pre-storm, fair-market value of the home, or the cost to repair the home.

19.    In developing the Road Home program, the state considered basing the compensation and incentives payment amounts on the tax valuations of homes. As part of the technical assistance HUD provided to the state, HUD stated its concern about using tax values as part of the basis for the calculation of the homeowner payment amount because the tax valuation

8

system(s) in Louisiana, and in New Orleans Parish in particular, were unreliable, resulting in vastly different values for similar homes, with no rational basis. The state ultimately chose not to use tax values as a basis for providing compensation and incentives grants.

20.    Although the state chose to base the calculation of the homeowner compensation and incentives grant on either the pre-storm property value or the cost of storm damage, compensation and incentives under the Road Home program are not actually for storm damage. The Road Home program provides compensation and incentives for the homeowner's agreement to meet certain recovery conditions, such as remaining in a certain geographic area, maintaining flood insurance on a dwelling, and meeting modern building codes within a prescribed period of time.

21.    Louisiana also provides Additional Compensation Grants of up to $50,000 for certain homeowners. Total compensation and incentive grants are still capped at $150,000. Louisiana offers Additional Compensation and incentives Grant to applicants with household incomes 80 percent and below the median income in the parish where the house was located. In addition to the Additional Compensation Grants, Louisiana provides compensation and incentives grants to homeowners via Individual Mitigation Measures and Elevation Incentives. Individual Mitigation Measures provide incentive grants to homeowners to install home "hardening" features that will protect homes from future storm damage, including storm shutters and roof tie downs. Elevation Incentives are grants to elevate site-built homes and mobile homes to meet FEMA's current Advisory Base Flood Elevation or Base Flood Elevation levels to protect against future floods.

22.    As part of the technical assistance HUD provided to Louisiana, HUD reviewed the Road Home program's ability to help Louisiana meet the overall benefit requirements of the special appropriations. As noted above, the special appropriations' overall benefit requirement is

9

that 50 percent of the state's disaster recovery CDBG expenditures will support activities that benefit low- and moderate-income persons. To meet that requirement, Louisiana can count homeowner payments to low- and moderate-income households and rental projects that house low- and moderate-income tenants toward the overall requirement, but it cannot count payments to above-income homeowners or for above-income rental projects. HUD determined that Louisiana's inclusion of the Additional Compensation Grant, Individual Mitigation Measures, and Elevation Allowances could help the state meet the overall benefit requirement.

23.    On June 14, 2006, HUD published a Federal Register notice granting additional waivers to Louisiana and approving Louisiana's Road Home program. 71 Fed. Reg. 34451 (June 14, 2006). Finding that additional waivers and alternative requirements are not inconsistent with the overall purpose of the HCDA, HUD waived statutory and regulatory requirements to allow Louisiana to provide compensation to homeowners whose homes were damaged, "if the homeowners agree to meet the stipulations of the published program design." *Id.* HUD also allowed Louisiana to "offer disaster recovery or mitigation housing incentives to promote housing development or resettlement in particular geographic areas." *Id.* at 34453. In addition, HUD approved Louisiana's use of disaster recovery CDBG funds for, among other things, (i) government buildings; (ii) special economic development job-retention activities; (iii) down payment assistance for new construction; (iv) support of the tourism industry; (v) relocation assistance; and (vi) the one-for-one replacement requirement of housing units damaged by disaster. *Id.* at 34452-53.

24.    On March 6, 2007, HUD provided additional waivers that allowed Louisiana to use CDBG disaster recovery funds for, among other things, (i) research, commercialization, and educational enhancement; (ii) operating subsidies for affordable rental housing; and (iii) rental and utility payment assistance. 72 Fed. Reg. 10014 (Mar. 6, 2007).

25.    To date, HUD has obligated $12,400,000,000 to Louisiana to administer the Road Home program. Of the remaining funds that Congress has appropriated for disaster recovery, HUD has not yet obligated $1,000,000,000 to Louisiana. In addition to its homeowner compensation and incentives program, Louisiana has devoted approximately $1,540,000,000 CDBG disaster recovery funds to affordable rental housing programs. Rental housing assistance programs funded by the grant include the Low-Income Housing Tax Credit ("LIHTC") Piggyback Program, Gulf Opportunity Zone ("GO Zone") tax credits, public housing projects and developer incentives. Louisiana also has devoted funds for homeless shelters and homelessness cessation services.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

Dated: 03/06/2009                    Signed: Jessie Handforth Kome