UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IRIS CALOGERO | CIVIL ACTION |
| VERSUS | NO. 18-6709 |
| SHOWS, CALI & WALSH, LLP, a Louisiana limited liability partnership; MARY CATHERINE CALI, an individual; and JOHN C. WALSH, an individual | SECTION M (3) |

## ORDER & REASONS

Before the Court is a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure by defendants Shows, Cali & Walsh, LLP, Mary Catherine Cali, and John C. Walsh (collectively "Defendants") to dismiss the individual and class action Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, claims of plaintiff Iris Calogero ("Calogero") for failure to state a claim.[1] Having considered the parties' memoranda and the applicable law, the Court grants the motion, concluding that the money Calogero allegedly owes to the State of Louisiana for overpayment under the Road Home grant program is not a debt as defined by the FDCPA.

### I. BACKGROUND

In August and September 2005, Hurricanes Katrina and Rita caused widespread property damage in Louisiana and other Gulf Coast states. To aid in disaster relief, Congress appropriated funds that were administered through the Community Development Block Grant Program of the United States Department of Housing and Urban Development ("HUD") and distributed to state governments. *In re Katrina Canal Breaches Consol. Litig.*, 2009 WL 1046016, at *1 (E.D. La. Apr. 16, 2009); *In re Katrina Canal Breaches Consol. Litig.*, 2011 WL 13205919, at *1 (E.D.

---

[1] R. Doc. 11. Calogero opposes the motion. R. Doc. 19. Defendants filed a reply in further support of the motion. R. Doc. 22.

1

La. Oct. 24, 2011). Louisiana created the Road Home program to disburse these funds to homeowners in the form of grants to compensate them up to $150,000 for structural damages caused by the storms. *In re Katrina Canal Breaches Consol. Litig.*, 2011 WL 13205919, at *1. The Road Home program was administered through the Louisiana Office of Community Development ("OCD") and the Louisiana Recovery Authority.[2]

The Road Home program placed certain conditions on the recipients' use of the money and other covenants to run with the land.[3] As explained by the court in *In re Katrina Canal Breaches Consolidated Litigation*:

> Consistent with federal law, the Road Home program prohibits providing any relief funds that would duplicate payments from other sources, and therefore the Road Home program deducts any insurance payments from the federal grants that it receives. Individual recipients of grant money must likewise reimburse the State insofar as they subsequently receive insurance payments or other payments for losses covered by their Road Home grants. To the extent that the State recovers funds pursuant to these Agreements, the State recycles such funds within the Road Home Program. As part of the closing process, the Road Home program requires that individual recipients execute the Road Home Limited Subrogation/Assignment Agreement ("Agreement") in which the recipient promises to pay back any Road Home funds that are duplicated through other sources, such as through insurance payments for building coverage. The recipient further assigns the right to such duplicate funds to the State, and further agrees to provide notice to the State if he/she chooses to "abandon, dismiss, or release the claims against [his/her] insurance company ... to allow the State to individually pursue recovery of the rights which have been assigned to the State herein."

*Id*.

Calogero's home in Slidell, Louisiana, was significantly damaged by the storms.[4] On May 11, 2007, Calogero entered into a contract with the OCD to receive a Road Home grant in the amount of $33,392.68.[5] "[I]n consideration of receipt of all Grant proceeds as compensation for damages incurred by [Calogero] due to the Hurricanes," she agreed to contractual covenants

---

[2] R. Doc. 1 at 4.
[3] R. Doc. 1-1.
[4] R. Doc. 1 at 2-4.
[5] *Id.* at 4; R. Doc 1-3 at 2.

2

pertaining to alienation and use of the property, maintenance of flood insurance, and other items.[6] Calogero also agreed to repay to the State any additional funds she received from her insurance company or the Federal Emergency Management Agency ("FEMA") for damage to the property caused by Hurricanes Katrina and/or Rita in the amount by which her Road Home grant would have been reduced if she had received those payments prior to receiving the grant.[7]

On February 9, 2018, Defendants sent Calogero a letter informing her that they represented the OCD in an effort to retrieve Road Home grant overpayments, and that she owed $4,598.89 to the State because she received more in total insurance proceeds than the amount used to calculate her grant.[8] On March 5, 2018, Calogero disputed the alleged overpayment.[9]

On April 10, 2018, Defendants sent a letter to Calogero's counsel explaining that Calogero initially reported to OCD $5,200 in FEMA payments and $14,733.29 in homeowners' insurance proceeds for structural damage, which amounts were used to calculate Calogero's Road Home grant. OCD later learned that Calogero actually received $10,500 from FEMA and $16,003.14 in structural damage insurance proceeds from her insurer, resulting in variances of FEMA benefits and insurance benefits used to calculate her Road Home grant in the amounts of $5,300 and $1,269.85, respectively.[10] As a result, after accounting for a $1,970.96 credit in the lack-of-flood-insurance penalty, OCD calculated that Calogero's Road Home grant should have been $28,793.79, rather than the $33,392.68 she received.[11]

On July 16, 2018, Calogero filed this action alleging that Defendants violated the FDCPA because the collection letter did not inform her both that the alleged debt is prescribed and thus

---

[6] R. Doc. 1-1 at 1-2.
[7] R. Doc. 1-1 at 8.
[8] R. Doc. 1-2 at 1.
[9] R. Doc. 1 at 5.
[10] R. Doc. 1-3 at 2.
[11] *Id.*

unenforceable, and that any repayment would restart the statute of limitations.[12] Calogero contends that, by administering the Road Home program to distribute federal funds, the OCD acted as a federal agency and any action to recover overpayments is subject to a six-year statute of limitations under 28 U.S.C. § 2425.[13] Thus, Calogero argues that the overpayment debt is unenforceable and Defendants' collection letter violated the FDCPA by falsely (according to her) implying that OCD could sue her for breach of contract.[14] Calogero also asserts that the letter misrepresented the nature of her alleged debt because it stated that the entire $4,598.89 Road Home grant overpayment was due to unreported insurance proceeds, when only $1,269,85 of that amount was in unreported insurance proceeds, whereas the rest was unreported payments from FEMA.[15]

## II. PENDING MOTION

Defendants move to dismiss Calogero's individual and class FDCPA claims arguing that the FDCPA is inapplicable because Calogero's obligation to repay the overpayment on her Road Home grant is not a debt as defined by the statute.[16] Defendants argue that the money was disaster compensation intended to help recipients expeditiously rebuild their homes after Hurricanes Katrina and/or Rita, and that it "would never have to be repaid unless: a) the grant recipient was determined to have not been eligible for the Grant; b) the terms of compliance set forth in the contractual agreements were not met; or c) the amount of the Grant was determined

---

[12] R. Doc. 1 at 9-11. Calogero also seeks to represent a class of plaintiffs who received similar letters from Defendants within one year of her filing this action. *Id.* at 6-8.

[13] *Id.* at 9. Because the Court finds that the overpayment allegedly owed by Calogero to the State is not a "debt" under the FDCPA, it is unnecessary to discuss Calogero's federal actor theory or the applicable statute of limitations.

[14] *Id.* at 9-10.

[15] *Id.* at 11.

[16] R. Doc. 11-1 at 20-22. Defendants also argue that Louisiana's ten-year prescriptive period for breach of contract actions, La. Civ. Code art. 3499, applies to Calogero's alleged overpayment debt, not the federal six-year statute of limitations set forth in 28 U.S.C. § 2425. R. Doc. 11-1 at 7-19. Thus, Defendants maintain that their letter was not attempting to collect on an unenforceable debt and did not violate the FDCPA in the ways alleged by Calogero. *Id.* Again, because the Court finds that the overpayment allegedly owed by Calogero to the State is not a "debt" under the FDCPA, it is unnecessary to determine the applicable prescriptive or limitations period.

to have been calculated in error based on information available at the time of the Grant disbursement."[17] Defendants point out that there were no contractual interest or late charges, and the obligations assumed by the grant recipients, such as Calogero, were to ensure that the money was used appropriately, not to create either a promise to repay the funds or consumer debt.[18] Thus, the FDCPA is not applicable to Defendants' attempts to collect the $4,598.89 in Road Home overpayments that Calogero owes.[19] Defendants further argue that it is irrelevant that they included in the collection letter language required by the FDCPA because using such language does not of itself render applicable the FDCPA.[20]

Calogero counters that her obligation to repay the alleged overpayment is a debt under the FDCPA because it arose from the consumer transaction of her entering into the Road Home contract.[21] As required by the FDCPA, the funds received were meant for "personal, family or household purposes" – in this case, repairs for structural damage to Calogero's home. She analogizes her situation to that of the seller in *Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833 (11th Cir. 2010), in which the Eleventh Circuit held that a seller's obligation to repay PayPal, under the user agreement, for funds he withdrew from his account on a transaction that PayPal later reversed as fraudulent on the part of the third-party buyer, was a debt under the FDCPA.[22] According to Calogero, *Oppenheim* stands for the proposition that a contractual obligation to repay is a debt under the FDCPA.[23] Further, Calogero argues that Defendants must have considered themselves subject to the FDCPA by including in the collection letter language required by the statute.[24]

---

[17] *Id.* at 21 (emphasis omitted).
[18] *Id.* at 21-22.
[19] *Id.*
[20] R. Doc. 22 at 10.
[21] R. Doc. 19 at 17-20.
[22] *Id.* at 18-20.
[23] *Id.*
[24] *Id.* at 20-21.

## III. LAW & ANALYSIS

### A. Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555-57).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than a mere possibility of

misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Id.* However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Motions to dismiss are disfavored and rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2007); *see also Kitty Hawk Aircargo, Inc. v. Chao.*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

**B. The FDCPA**

The FDCPA is designed in part "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692. To achieve that goal, the act forbids debt collectors from taking certain actions, including using false, deceptive, or misleading representations or means in connection with debt collection. *Poirier v. Alco Collections, Inc.*, 107 F.3d 347, 349 (5th Cir. 1997); 15 U.S.C. § 1692(e). "'To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt.'" *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 358 (3d Cir. 2018) (quoting *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014)); *see also Askew v. Crown Mgmt., LLC*, 2017 WL 1534396, at *3 (N.D. Miss. Apr. 27, 2017) (reciting a similar test).

Not all payment obligations are "debts" under the FDCPA. *Turner v. Cook*, 362 F.3d 1219, 1226 (9th Cir. 2004). The FDCPA defines "debt" as

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5). In interpreting this definition, courts have concluded "at a minimum, the statute contemplates that the debt has arisen as a result of the rendition of a service or purchase of property or other item of value." *St. Pierre*, 898 F.3d at 358-59 (quoting *Staub v. Harris*, 626 F.2d 275, 278 (3d Cir. 1980)); *Beggs v. Rossi*, 145 F.3d 511, 512 (2d Cir. 1998) (quoting the same sentence from *Staub*); *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 170 (2d Cir. 2015) (quoting the same sentence from *Beggs*). In other words, "the statute is limited in its reach 'to those obligations to pay arising from consensual transactions, where parties negotiate or

contract for consumer-related goods or services.'" *Turner*, 362 F.3d at 1227 (quoting *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1326 (7th Cir. 1997)).

The Fifth Circuit has stated "[o]nly financial obligations incurred for purchases 'primarily for personal, family, or household purposes' qualify as consumer 'debt' subject to the rules and regulations of the FDCPA." *Garcia v. Jenkins Babb, L.L.P.*, 569 F. App'x 274, 275 (5th Cir. 2014) (quoting 15 U.S.C. § 1692a(5)); *see also Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 391 (5th Cir. 2002) (quoting *Bass*'s definition of "debt" as "any obligation to pay arising out of a consumer transaction"). Thus, when determining whether an obligation is an FDCPA "debt," "courts focus on the precise transaction for which the loan proceeds were used, not the purpose for which an account was opened or the label of the ongoing obligation." *Garcia*, 569 F. App'x at 275-76 (citing *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, LLC*, 214 F.3d 872, 875 (7th Cir. 2000)); *Hamilton*, 310 F.3d at 391 ("'transaction' is a broad reference to many different types of business dealings between parties"). Such a focus on the transaction "comports with the FDCPA's intent to regulate 'debt collection tactics employed against *personal* borrowers,' who, unlike commercial borrowers, are more likely to fall 'prey to unscrupulous collection methods.'" *Garcia*, 569 F. App'x at 276 (quoting *Miller*, 214 F.3d at 875) (emphasis in original).

Here, Calogero's obligation to repay the alleged Road Home overpayment is not a "debt" as defined by the FDCPA. The precise transaction that created the obligation was OCD's issuing a **grant** to Calogero under the Road Home program, a condition of which was that she agreed to repay any overpayments. There was no consumer transaction between Calogero and OCD. Calogero did not give OCD money for goods or services, or vice versa. Rather, OCD granted to Calogero money to repair her home – money that Calogero would never be obligated to repay

9

unless she broke one of the covenants or received an overpayment. The FDCPA's application is limited to the recovery of debts incurred as a result of transactions for the consumption of consumer goods and services. OCD's grant of funds to a hurricane victim that elicited a promise from the recipient to return funds to which she was never entitled is not such a transaction. *Cf. Orenbuch v. Leopold, Gross & Sommers, P.C.*, 586 F. Supp. 2d 105, 108 (E.D.N.Y. 2008) (salary overpaid as a result of accounting error is not a "debt" within meaning of FDCPA because "there was no consumer transaction that gave rise to the debt"); *Arnold v. Truemper*, 833 F. Supp. 678, 685-86 (N.D. Ill. 1993) (amount bank mistakenly credited to customers' account did not constitute a "debt" under the FDCPA).

Calogero's reliance on *Oppenheim* is misplaced. In *Oppenheim*, the plaintiff Oppenheim sold his laptop to a buyer via Craigslist, and the buyer deposited the payment into Oppenheim's PayPal account. *Oppenheim*, 627 F.3d at 835. Oppenheim transferred the funds to his personal bank account. A few weeks later, PayPal discovered that the buyer's payment was fraudulent and requested that Oppenheim refund the money to PayPal pursuant to the user agreement that allows PayPal to reverse a transaction in such a situation. Oppenheim refused and PayPal hired I.C. Systems, Inc. ("I.C. Systems"), a collection service, which repeatedly called Oppenheim in an attempt to collect the funds. Oppenheim sued I.C. Systems under the FDCPA. *Id.* at 836. I.C. Systems moved for summary judgment arguing that Oppenheim's obligation to PayPal was not a debt covered by the statute. The Eleventh Circuit disagreed with I.C. Systems and held that the obligation at issue was an FDCPA debt. *Id.* at 838. At the core of its decision, the court reaffirmed that a consumer transaction is required to apply the FDCPA, and that the relevant transaction was Oppenheim's purchase of PayPal's services from which his obligation to repay arose. *Id.* at 837-38. The court did not hold that just any contractual obligation to repay

constitutes a debt under the FDCPA. Instead, the court held that there was a qualifying transaction that gave rise to the consumer debt in that case. As stated above, Calogero did not incur any consumer debt by purchasing any goods or services from OCD; instead she received grant monies, and the obligation to repay arose as a result of the overpayment of the grant funds to which Calogero was never entitled. The overpayment of the Road Home grant funds is more like the overpaid salary the court in *Orenbuch* concluded was not a debt for purposes of the FDCPA, than it is like the quintessential consumer credit transaction at issue in *Oppenheim*. As such, Calogero's case is distinguishable from *Oppenheim.*

IV. **CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendants' motion to dismiss (R. Doc. 11) is GRANTED, and Calogero's complaint is DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 25th day of June, 2019.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE