UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IRIS CALOGERO                                    CIVIL ACTION

VERSUS                                           NO. 18-6709

SHOWS, CALI & WALSH, LLP, a                      SECTION M (3)
Louisiana limited liability partnership;
MARY CATHERINE CALI, an
individual; and JOHN C. WALSH,
an individual

## ORDER & REASONS

Before the Court is the motion of plaintiffs Iris Calogero and Margie Nell Randolph (together, "Plaintiffs") to review the magistrate judge's decision on their motion to compel.[1] Defendants Shows, Cali & Walsh, LLP ("SCW"), Mary Catherine Cali, and John C. Walsh (collectively, "Defendants") respond in opposition.[2] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons denying the motion.

## I.    BACKGROUND

This case arises from an alleged violation of the Fair Debt Collection Practices Act ("FDCPA") in attempting to recover the overpayment of Road Home grants. After hurricanes Katrina and Rita devastated the Gulf Coast area, the federal government appropriated funds to address the unprecedented housing crisis.[3] As a result, Louisiana developed the Road Home Program which was administered by the Louisiana Office of Community Development ("OCD").[4]

---

[1] R. Doc. 92.
[2] R. Doc. 94.
[3] R. Doc. 1 at 3.
[4] *Id*. at 4.

Calogero was one of the recipients of these funds as her home was damaged by the hurricanes.[5]
As part of a May 11, 2007 contract, Calogero understood she could be prosecuted for "false,
misleading, and/or incomplete statements and/or documents."[6]  Over ten years later, on February
9, 2018, Defendants sent a letter to Calogero seeking repayment of an "alleged grant overpayment"
due to insurance proceeds overages.[7]  Calogero alleges that these "form collection letters sent by
Defendant to thousands of Louisiana residents threatened legal action on claims that were time-
barred, without advising that payment on the debt would revive the statute of limitations."[8]
Calogero filed her lawsuit against Defendants on July 16, 2018, claiming violations of the
FDCPA.[9]  One of the key issues in this case is what statute of limitations applies to collection
efforts directed to the alleged underlying debts.

Plaintiffs filed a motion to compel Defendants to respond to Plaintiffs' second set of
interrogatories and requests for production of documents.[10]  Plaintiffs were granted leave to file a
supplemental memorandum in further support of their motion.[11]  In their briefing, Plaintiffs
reported that "[a]n hour and a half after Plaintiffs filed their motion … Defendants served upon
Plaintiffs their responses, which reflected about an hour and a half's worth of work."[12]  Plaintiffs
argued that "[t]he character of the motion to compel, therefore, has shifted from a request to compel
*any* responses to a request to compel appropriate responses."[13]  Defendants opposed the motion.[14]

---

[5] *Id.*
[6] *Id.* at 5.
[7] *Id.* (quoting R. Doc. 1-2).
[8] R. Doc. 93 at 1.
[9] R. Doc. 1.
[10] R. Doc. 74.
[11] R. Doc. 84.
[12] R. Doc. 85 at 1.
[13] *Id.* at 2 (emphasis in original).
[14] R. Doc. 87.

On July 14, 2021, the magistrate judge denied the motion.[15]  Plaintiffs then filed the objections to the magistrate judge's ruling that are currently pending before the Court as this motion to review.[16]

## II.      LAW & ANALYSIS

### A.  Legal Standard

Magistrate judges are empowered to "hear and determine" certain nondispositive pretrial motions.  28 U.S.C. § 636(b)(1)(A); *see also PYCA Indus., Inc. v. Harrison Co. Waste Water Mgmt. Dist.*, 81 F.3d 1412, 1421 n.11 (5th Cir. 1996).  If a party is dissatisfied with a magistrate judge's ruling on a nondispositive motion, it may appeal to the district court.  Fed. R. Civ. P. 72(a).  When timely objections are raised, the district court will "modify or set aside any part of the order that is clearly erroneous or is contrary to law."  *Id.*; *see also* 28 U.S.C. § 636(b)(1)(A).  The court reviews the magistrate judge's "factual findings under a clearly erroneous standard, while legal conclusions are reviewed *de novo.*"  *Moore v. Ford Motor Co.*, 755 F.3d 802, 806 (5th Cir. 2014) (quotations omitted).  A factual "finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

### B. Analysis

#### 1.  Defendants' billing records

Interrogatory No. 8 states:

From the beginning of SCW's representation of the State of Louisiana in the matter of the Road Home Program to date, please describe each and every charge submitted in SCW's monthly billing statements relating to legal research on the issue of prescription, peremption, or any other time bar potentially applicable to the recapture of alleged overpayments from Grantees.[17]

---

[15] R. Doc. 88.
[16] R. Doc. 92.
[17] R. Doc. 74-2 at 5.

3

Defendants objected to the interrogatory "as calling for privileged information protected by the attorney/client and/or work product privilege."[18]

Plaintiffs argue that they are entitled to Defendants' billing records because Defendants are asserting a *bona fide* error defense – which Plaintiffs say requires Defendants to establish the reasonableness of their efforts if they were in fact relying on an incorrect prescriptive period in sending out collection letters.[19]  Thus, Plaintiffs assert that whether Defendants made reasonable attempts to avoid any such error and whether they undertook legal research on the time-bar issue are relevant questions.[20]  Plaintiffs contend that "[b]ecause Defendants' contracts with OCD required them to detail all of their work in monthly billing statements, the time spent on research into the applicable statute of limitations should be recorded there."[21]  Finally, Plaintiffs argue that the attorney-client privilege is inapplicable because "[a]ll Plaintiffs want are the dates and the amount of time spent on legal research concerning the statute of limitations, so that they can determine whether Defendants exercised good faith in the matter within the meaning of the FDCPA."[22]

In opposition, Defendants argue that the magistrate judge correctly found that Plaintiffs' request was overbroad.[23]  Defendants note that, after having lost before the magistrate judge, Plaintiffs are attempting in their opposition to limit the breadth of their request by "now argu[ing] that what they *meant* to request was far narrower than what they actually did request, and that the defendants should be compelled to respond to these revised requests."[24]  After all, Defendants say,

---

[18] R. Doc. 85-1 at 6.
[19] R. Doc. 92-1 at 8.
[20] *Id.*
[21] *Id.*
[22] *Id*. at 11.
[23] R. Doc. 94 at 2-3.
[24] *Id.* at 3 (emphasis in original).

the magistrate judge had already ruled that in their requests, as framed, Plaintiffs "seek information that is protected by the attorney-client privilege."[25]

This conclusion is not clearly erroneous or contrary to law.  The interrogatory as initially drafted seeks every charge and amount of time spent conducting legal research on prescription or peremption for matters concerning every grant recapture file Defendants handled "[f]rom the beginning of SCW's representation of the State of Louisiana in the matter of the Road Home Program to date."  Thus, as drafted, the request is plainly overbroad.  Further, the interrogatory seeks information involving attorney-client communications.  While as a "'general rule, client identities and fee arrangements are not protected as privileged,'" *Taylor Lohmeyer Law Firm P.L.L.C. v. United States*, 957 F.3d 505, 510 (5th Cir. 2020) (quoting *In re Grand Jury Subpoena for Attorney Representing Criminal Defendant Reyes-Requena*, 926 F.2d 1423, 1431 (5th Cir. 1991)) (alteration omitted), attorney-client communications are protected when the client's "'primary purpose' [is] 'securing either a legal opinion or legal services, or assistance in some legal proceeding.'"  *Id.* (quoting *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017)).  Attorney "time sheets and billing records are protected by the attorney-client privilege to the extent that they reveal the nature of services performed and/or the type of work performed by an attorney."  *C.J. Calamia Constr. Co. v. ARDCO/Traverse Lift Co.*, 1998 WL 395130, at *3 (E.D. La. July 14, 1998).  Here, the request expressly asks for descriptions of time entries about a particular type of work Defendants performed, so the information is also protected by the attorney-client privilege.

### 2.  Defendants' other state contracts

Interrogatory No. 2 states:

---

[25] R. Doc. 88 at 2.

> Please state whether the provisions authorizing federal audits contained in those contracts between SCW and the State of Louisiana relating to recapture of Road Home grant funds were contained in any other contracts between SCW and the State which did not relate to Road Home funds.  If so, please state the nature of the work undertaken by SCW in each and every State contract not providing for federal audits.[26]

Defendants objected to this request as seeking irrelevant information but explained that "[s]ubject to these objections, contracts with the State are in [the] public record, and defendants already produced its contract with the State."[27]

In their objections, Plaintiffs argue that other contracts between SCW and the State are relevant because they relate to whether SCW was acting as an agent of the federal government in attempting to collect the alleged debt in this case.[28]  If so, they say the six-year statute of limitations in 28 U.S.C. § 2415 applies.[29]  Therefore, Plaintiffs hope to use the other contracts to prove the federal government's involvement with the contract in this case.[30]  They emphasize that the Fifth Circuit specifically noted that the involvement of the federal government in collecting the debt is relevant to analyze the appropriate statute of limitations.[31]  In opposition, Defendants argue that their contracts with the State in other cases are not relevant "and that it [would be] unreasonable to force the defendants to examine all such contracts for any 'audit' provisions."[32]  The magistrate judge agreed that "the requests seek information that is not relevant or proportional to the claims or defenses at issue in the case."[33]

This Court also agrees.  Asking Defendants to check every contract unrelated to the Road Home program that SCW has entered with the State for a specific "audit" provision is not

---

[26] R. Doc. 74-2 at 3.
[27] R. Doc. 85-1 at 3.
[28] R. Doc. 92-1 at 14.
[29] *Id.*
[30] *Id.* at 15-16.
[31] *Id.* at 14-15.
[32] R. Doc. 94 at 4.
[33] R. Doc. 88 at 1.

sufficiently tailored to gain information relevant to the legal issues in this case.  The magistrate judge's ruling on this point is neither clearly erroneous nor contrary to law.

### 3. Lawsuits filed against other recipients of Road Home homeowners' grants

Interrogatory No. 3 states:

> Please state how many lawsuits SCW has filed seeking to recover alleged grant overpayments deriving from duplication of benefits received by homeowners' compensation grantees, and state in how many of those the courts have addressed the matter of prescription, peremption, or any other potentially applicable time bar. For each action identified as addressing any time bar, provide the caption of the case, the decision of the court, and state the finality of the decision.[34]

Defendants responded:

> Defendants object to this request as unduly burdensome, and seeking information that is not relevant to this suit.  Plaintiffs further have the ability to search court records on their own.  Subject to these objections, defendants have filed seven such suits since their involvement in the recovery of Road Home funds for OCD-DRU. To date, no ruling addressing any time bar has been made in these cases.[35]

Plaintiffs argue that these seven suits could be filed anywhere in the State and that Defendants' objection thus invites Plaintiffs "to scour the records of every judicial district for the seven cases which Defendants themselves filed and obviously have at hand."[36]  Plaintiffs contend that such information is relevant as it could lead to the discovery of additional class members and gain insight into Louisiana courts' interpretation of the key prescription issue.[37]   In opposition, Defendants note that the magistrate judge found that their response was sufficient.[38]  They contend that they "responded to that request, and provided the number of suits filed, and that no court had issued any rulings finding a time bar for the claims."[39]

---

[34] R. Doc. 74-2 at 3-4.
[35] R. Doc. 85-1 at 4.
[36] R. Doc. 92-1 at 19.
[37] *Id.* at 19-20.
[38] R. Doc. 94 at 4-5.
[39] *Id.* at 5.

Plaintiffs take issue with Defendants' answer because they state "the issue of prescription has recently been taken up by a Louisiana Court of Appeal, and decision is pending."[40] This is not inconsistent with Defendants' response that "[t]o date, no ruling addressing any time bar has been made in these cases." Nor does it supply information Plaintiffs requested. In essence, then, Plaintiffs seek to compel a response to a request they did not make. Therefore, the magistrate judge's conclusion that Defendants' response was sufficient is not clearly erroneous or contrary to law.

### 4. Response to interrogatory No. 7

Interrogatory No. 7 states:

> Please refer to Exh. 27, Part 8 of the Cali deposition, which states "Documentation available. Homeowner's insurance settlement claim documentation is uploaded into EGP," and describe with particularity each and every item of documentation available.[41]

Defendants responded:

> Assuming this request refers to the "Road Home Grant Checklist" attached as Exhibit 27 to defendant Cali's deposition, the checklist attached as Exhibit 27 is a data entry fill. The document is completed by OCD staff. Defendants note that "Documentation available. Homeowners insurance settlement claim documentation is uploaded into EGP" is not what is checked on the document.[42]

In their motion, Plaintiffs contend that the checklist box next to the quoted statement is indeed marked and that they are entitled to such information if in the possession of Defendants.[43] At the very least, Plaintiffs say, Defendants should clarify whether or not they have such documents.[44] In opposition, Defendants insist they have complied with the request by producing

---

[40] R. Doc. 92-1 at 20.
[41] R. Doc. 74-2 at 4-5.
[42] R. Doc. 85-1 at 5.
[43] R. Doc. 92-1 at 21-22.
[44] *Id.* at 22.

all responsive documents in their possession.[45]  Because the checklist was prepared by OCD, Defendants submit that "[w]hile plaintiffs now appear to want the defendants to *interpret* a document prepared by another party, it is submitted that said request is inappropriate, particularly since the plaintiffs have already had the chance to depose the preparers of the document (OCD) on the document."[46]

The magistrate judge specifically found that the documents Defendants produced in response to the request for production corresponding to interrogatory no. 7 was a sufficient response to the interrogatory itself.[47]  Because Defendants represent in their opposition that they have produced all responsive documents in their possession, and they cannot be forced to produce a document they do not have, the magistrate judge's ruling is not clearly erroneous or contrary to law.

Finally, because none of the magistrate judge's rulings is clearly erroneous or contrary to law, Plaintiffs' objections are overruled.  In these circumstances, an award of attorney fees is not warranted.

## III.   CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that the motion of plaintiffs Iris Calogero and Margie Nell Randolph to review the magistrate judge's decision on motion to compel (R. Doc. 92) is DENIED.

New Orleans, Louisiana, this 16th day of August, 2021.


BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[45] R. Doc. 94 at 5.
[46] *Id.* (emphasis in original).
[47] R. Doc. 88 at 1-2.

9